# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

*edwards, J. with additional reasons.*

**2025 CJ 0625**

# IN RE: TERMINATION OF PARENTAL RIGHTS TO THE MINOR CHILD L.H.

Judgment Rendered: **DEC 17 2025**

\* \* \* \* \*

On Appeal from the
Juvenile Court
In and for the Parish of East Baton Rouge
State of Louisiana
Juvenile Court No. 11373

The Honorable Adam J. Haney, Judge Presiding

\* \* \* \* \*

| | |
|---|---|
| Heidi M. Vessel<br>Zachary, Louisiana | Attorney for Appellant,<br>L.H. |
| Mark D. Plaisance<br>Marcus J. Plaisance<br>Prairieville, Louisiana | Attorneys for Appellee,<br>St. Elizabeth Foundation |
| Dean M. Esposito<br>Baton Rouge, Louisiana | |

\* \* \* \* \*

BEFORE: MILLER, EDWARDS, AND FIELDS, JJ.

*Fields, J concurs with reasons*

**MILLER, J.**

Petitioner/Appellant, L.H., appeals from a judgment of the juvenile court, which sustained an exception of prescription (based on peremption) in favor of Respondent/Appellee, St. Elizabeth Foundation, and dismissed L.H.'s petition to annul the agency adoption with prejudice. For the following reasons, the judgment of the juvenile court is affirmed, and the answer to appeal is denied.

## FACTS AND PROCEDURAL HISTORY

L.H.[1] ("biological mother") gave birth to a child, L.H. ("child"), on June 17, 2021. About a year after the child was born, on July 21, 2022, the biological mother signed a voluntary act of surrender for adoption, surrendering the child to St. Elizabeth Foundation.[2] The voluntary act of surrender was filed on July 26, 2022, and the juvenile court entered an order approving the surrender on August 1, 2022. Afterward, on October 5, 2022, the biological father's parental rights were terminated.

The child was placed in the adoptive parents' home on July 22, 2022, and they filed a "Petition for Agency Adoption" on September 11, 2023. The juvenile court signed a judgment on October 20, 2023, declaring the child to be the child of the adoptive parents.

On May 20, 2024, the biological mother filed a "Petition to Annul Agency Adoption and Writ of Habeus Corpus." The biological mother alleged that she contacted St. Elizabeth Foundation for financial assistance but was "coerced into surrendering the [child.]" She further alleged that St. Elizabeth Foundation told her she would be able to contact the child after the adoption but rescinded the verbal

---

[1] The initials of the minor child and biological mother are used in this opinion to protect the privacy of the parties involved. See Uniform Rules - Courts of Appeal, Rules 5-1 and 5-2. Further, both the biological mother's initials and the child's initials are L.H. Throughout this opinion, "L.H." and "biological mother" are used to refer to the biological mother, and "child" is used to refer to the child.

[2] St. Elizabeth Foundation is an adoption agency located in Baton Rouge, Louisiana.

2

agreement after she surrendered her rights; the biological father's rights were never terminated nor was the father served; she did not participate in at least two counseling sessions as required; she lacked the requisite mental capacity and sought to reverse her decision to surrender her rights; she was not able to hire an attorney to assist her due to financial constraints; and she was not able to consent to the voluntary act of surrender due to mental impairments. Thus, the biological mother sought "to have the adoption revoked, rescinded[,] and/or annulled."

On June 4, 2024, St. Elizabeth Foundation filed an exception of prescription, characterizing the suit as an action to annul the act of surrender and arguing that the biological mother's action was not timely filed pursuant to Louisiana Children's Code article 1148.[3] Thereafter, on August 20, 2024, the biological mother filed an opposition to St. Elizabeth Foundation's exception. She asserted that the act of surrender was an absolute nullity, but she emphasized that her action was best characterized as an attack on the adoption itself.

A hearing was held on September 6, 2024, and at the conclusion of the hearing, the juvenile court sustained St. Elizabeth Foundation's exception of prescription. Thereafter, on September 25, 2024, the court signed a judgment sustaining the exception and dismissing the biological mother's petition to annul the agency adoption. The biological mother appealed, contending that the juvenile court erred in sustaining St. Elizabeth Foundation's exception. St. Elizabeth Foundation answered the appeal, contending that it should be awarded attorney fees and costs because the biological mother has no legal basis for an appeal.

## DISCUSSION

In her sole assignment of error, the biological mother alleges that the juvenile court erred in sustaining St. Elizabeth Foundation's exception. Initially, we note,

---

[3] St. Elizabeth Foundation also filed an exception of no cause of action and a motion for sanctions, which are not at issue in this appeal.

although captioned as an exception of prescription, the pleading raises the issue of peremption based on Louisiana Children's Code article 1148.[4] Louisiana is a fact-pleading state that values substance over form and requires courts to look beyond the caption of the pleadings in order to ascertain their substance and do substantial justice to the parties. Matter of Cole, 2019-0938 (La. App. 1st Cir. 12/27/19), 293 So. 3d 1163, 1169, writ denied, 2020-00184 (La. 3/9/20), 307 So. 3d 1029. Therefore, we consider St. Elizabeth Foundation's exception to be a peremptory exception of peremption. See Nixon v. Nixon, 2020-0694 (La. App. 1st Cir. 12/30/20), 319 So. 3d 315, 317 n.2.

Peremption is a period of time fixed by law for the existence of a right. The right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458. When the peremptive period has run, the cause of action itself is extinguished unless timely exercised. Myers v. Houston Specialty Insurance Company, 2022-0773 (La. App. 1st Cir. 4/14/23), 366 So. 3d 616, 620-621. Peremption may not be renounced, interrupted, or suspended, except as otherwise provided by law. La. C.C. art. 3461. The objection of peremption is properly raised by a peremptory exception. See La. C.C.P. art. 927. While the exceptor ordinarily bears the burden of proof at the trial of the peremptory exception, if peremption is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action is not perempted. Myers, 366 So. 3d at 621.

At the hearing on the exception of peremption, evidence may be introduced to support or controvert the exception. See La. C.C.P. art. 931. If evidence is introduced at the hearing, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. Satterfield & Pontikes Construction, Inc. v. Breazeale Sachse & Wilson, LLP, 2015-1355 (La. App. 1st Cir.

---

[4] Peremption has been likened to the objection of prescription and the rules governing the burden of proof as to prescription also apply to peremption. See La. C.C. art. 3459; Nixon v. Nixon, 2020-0694 (La. App. 1st Cir. 12/30/20), 319 So. 3d 315, 318.

4

1/10/17), 212 So. 3d 554, 558, <u>writ denied</u>, 2017-0268 (La. 3/31/17), 217 So. 3d 363. However, in the absence of evidence, as is the case here, an exception of peremption must be decided based upon the facts alleged in the petition with all of the allegations accepted as true. <u>Regions Bank v. Eymard</u>, 2021-0926 (La. App. 1st Cir. 5/23/22), 342 So. 3d 908, 915, <u>writ denied</u>, 2022-00977 (La. 10/18/22), 348 So. 3d 731. When no evidence is introduced to support or controvert the exception, the appellate court's role is to determine whether the trial court's ruling was legally correct. <u>Breen v. Landry</u>, 2022-1132 (La. App. 1st Cir. 4/14/23), 366 So. 3d 577, 580, <u>writ denied</u>, 2023-00873 (La. 10/10/23), 371 So. 3d 455.

Initially, we note that both in her petition and her appellate brief, the biological mother argues that she attempted to reverse or revoke her voluntary act of surrender on the day it was executed, alleging St. Elizabeth Foundation "refused to adhere to her relinquishment." Louisiana Children's Code article 1123(A) provides that an act of surrender is generally irrevocable upon execution. For an agency adoption, as here, the only reason an act of surrender may be revoked by a birth mother or father is if it was executed earlier than three days following the birth of the child. <u>See</u> La. Ch.C. arts. 1123(A) and 1130(E). Here, the child was one year old when the biological mother executed the voluntary act of surrender, so it was irrevocable. However, the fact that the act of surrender is irrevocable does not speak to whether or not it may be annulled.

Next, the biological mother asserts that the time period applicable to her action is found in Louisiana Children's Code article 1263(A), not Article 1148, because she seeks to have the adoption annulled, not just her voluntary act of surrender. Louisiana Children's Code article 1263(A)[5] provides:

> An action to annul a final decree of adoption based upon a claim of fraud or duress perpetrated by anyone other than the adoptive parent

---

[5] The time limitations established in Article 1263 are peremptive in nature, and therefore are not subject to suspension. <u>See</u> La. C.C. art. 3458 and COMMENTS--1991, Comment (a) to La. Ch.C. art. 1263.

must be brought within six months from discovery of the fraud or duress and in no event later than one year from the date of the signing of the final decree or mailing of the judgment when required.

The biological mother makes no claim of fraud or duress by the adoptive parents. However, actions to annul an adoption, which are specifically based upon claims that the act of surrender was obtained by fraud or duress, are governed by the special time limitations contained in Louisiana Children's Code article 1148. COMMENTS--1991, Comment (b) to La. Ch.C. art. 1263. While the biological mother titled her petition as an action to annul an agency adoption, all of her claims alleging fraud or duress involve her voluntary act of surrender.[6] Therefore, we find Article 1148 is applicable to the action before us, and thus we turn to Article 1148 to determine whether the biological mother's claims are perempted.

Louisiana Children's Code article 1148 provides, "No action to annul a surrender shall be brought for any reason after ninety days from its execution or after a decree of adoption has been entered, whichever is earlier." La. Ch.C. art. 1148. The time limitation established by Article 1148 is peremptive in nature, and therefore not subject to suspension. See State in Interest of Taylor, 637 So. 2d 512, 514 (La. App. 1st Cir. 1993); see also State, Department of Social Services ex rel. J.O. v. L.O., 2002-0587 (La. App. 3rd Cir. 10/2/02), 829 So. 2d 616, 618 (stating "We find no fault with the First Circuit's analysis and their ultimate determination that [A]rticle 1148's time limitation is [peremptive]."). This court has held that with respect to the time limitation established by Article 1148, a surrendering parent loses the right to petition for the nullity of a surrender of parental rights after the passage of ninety days from the execution of the surrender or the entering of an adoption

---

[6] We note that the biological mother did assert other claims in her petition that did not include fraud or duress. In her petition, the biological mother alleged that the biological father's rights were never terminated nor was the biological father served. However, in her appellate brief, the biological mother concedes that the biological father's rights were terminated on October 5, 2022. She further indicated that she was not aware that the biological father's rights were terminated until she filed this appeal.

6

decree, whichever is earlier, and that the running of this ninety-day time period may not be renounced, interrupted, or suspended. State in Interest of Taylor, 637 So. 2d at 514.

The peremptive period for the biological mother to bring an action to annul her surrender expired on October 19, 2022, which was ninety days from its execution. However, she did not file her petition to annul until May 20, 2024.[7] Thus, the biological mother did not bring her action within ninety days of the execution of her voluntary act of surrender, so her action is preempted. Accordingly, we find the juvenile court was legally correct in sustaining St. Elizabeth Foundation's exception. This assignment of error is without merit.

## ANSWER TO APPEAL

St. Elizabeth Foundation filed an answer to the instant appeal, requesting an award of attorney fees and costs for frivolous appeal. It alleges that the biological mother's appeal is frivolous because her petition was filed significantly after the peremptive period expired. Louisiana Code of Civil Procedure article 2164 provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal . . . and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

Further, Rule 2-19 of the Uniform Rules of Courts of Appeal states that the court may award damages for a frivolous appeal in civil cases as provided by law. Damages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious. In re Fogg, 2019-0719 (La. App. 1st Cir. 2/21/20), 298 So. 3d 291, 296, writ denied,

---

[7] We note that the biological mother executed a voluntary act of surrender on July 21, 2022, and ninety days from the execution was October 19, 2022. A year later, the decree of adoption was entered on October 20, 2023. Therefore, under Article 1148, no action to annul the biological mother's surrender could be brought for any reason after October 19, 2022, since that date is earlier than October 20, 2023. See La. Ch.C. art. 1148.

2020-00819 (La. 10/14/20), 302 So. 3d 1124. While we find that the biological mother's assignment of error lacks merit, we do not find her appeal to be frivolous. Therefore, we find that attorney fees and costs for frivolous appeal are not warranted, and we deny St. Elizabeth Foundation's answer to the appeal.

## CONCLUSION

Based on the foregoing reasons, the September 25, 2024 judgment sustaining St. Elizabeth Foundation's exception of prescription (based on peremption) in favor of St. Elizabeth Foundation and against L.H. and dismissing L.H.'s petition is affirmed. St. Elizabeth Foundation's answer to the appeal is denied. Costs of this appeal are assessed one-half to St. Elizabeth Foundation and one-half to the L.H.

**AFFIRMED; ANSWER TO APPEAL DENIED.**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2025 CJ 0625

IN RE: TERMINATION OF PARENTAL RIGHTS
TO THE MINOR CHILD L.H.

**FIELDS, J.,** concurs in the result.

I write separately to note that I find the circumstances under which this "voluntary" surrender of the minor child was accomplished troubling. In this private surrender/adoption scenario, the law entitled the surrendering mother to two pre-surrender counseling sessions as well as representation by legal counsel unaffiliated with either the adoption agency or the adoptive parents. See La. Ch. Code arts. 1120 & 1121(A). However, it is alleged that neither of these requirements, which are intended to safeguard a parent when making the decision of whether to surrender a child, were adhered to when the mother of L.H., who allegedly suffered from clinically-diagnosed post-partum depression and bipolar syndrome disorder, and who was only looking for financial assistance to care for her child, ultimately executed a voluntary act of surrender.

Nevertheless, I am constrained to agree with the result of the majority as the time limit within which a surrendering parent may re-claim her child, for limited reasons (*i.e.* duress, fraud, or incompetency of the surrendering parent), is a fixed peremptive period, after which the surrendering parent's right is extinguished. See La. Ch. Code arts. 1147 & 1148; see also **State in Interest of Taylor**, 637 So.2d 512 (La. App. 1st Cir. 1993). Because the surrendering mother's action to annul was initiated after the ninety-day peremptive period provided by law, I agree that the lower court correctly sustained St. Elizabeth Foundation's peremptory exception raising the objection of prescription (preemption).

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

**2025 CJ 0625**

IN RE: TERMINATION OF PARENTAL RIGHTS TO THE MINOR CHILD L.H.

---

**EDWARDS, J.,** *assigning additional reasons.*

I agree with the majority's analysis and ultimate decision in this matter; however, I would decline to assess appellate court costs to Ms. Haile. I write further to acknowledge that the current procedures in the Louisiana Children's Code regarding voluntary acts of surrender did not protect the best interest of the minor child here and to articulate my concerns about the manner in which the voluntary act of surrender was made in this particular case.

The appellant, Li'Keisha Haile, was a twenty-two-year-old indigent, unwed mother allegedly suffering from clinically-diagnosed postpartum depression, attention deficit disorder, and bipolar syndrome disorder at the time she began a search to obtain financial assistance for herself and her biological child, who was then one-year-old, from organizations such as catholic charities and the Salvation Army. During that search, Ms. Haile viewed an ad for St. Elizabeth Foundation, which she claimed she believed was an organization that provided assistance to pregnant and unwed mothers. According to Ms. Haile, she was not aware that St. Elizabeth Foundation was an adoption agency until she met with one of its representatives and was allegedly "subjected to a high pressure, hard sale campaign" in order for her to execute a voluntary act of surrender for adoption. Ms. Haile alleged that St. Elizabeth Foundation assured her that the adoption would be "open" and that she would be allowed to maintain visits and contact with her biological child. St. Elizabeth Foundation then paid for Ms. Haile's food, clothing, rent, medical care, and other living expenses. Ms. Haile averred that she spoke with a

clinical psychologist prior to executing the voluntary act of surrender, but that she only participated in one counseling session, not the requisite two counseling sessions. Ms. Haile alleged that she was not represented by her own attorney prior to or at the time she executed the voluntary act of surrender, but was instead counseled by an attorney paid for by the adoptive parents. Ms. Haile signed the voluntary act of surrender after assurances from St. Elizabeth Foundation of the "open" nature of the adoption.

Ms. Haile alleged that immediately after she executed the voluntary act of surrender, she attempted to revoke the surrender that same day after she was allegedly "told there would be no further contact and that she would never see her child again." She claims that St. Elizabeth Foundation refused to "adhere to her revocation of consent" to the voluntary act of surrender. Ms. Haile asserts it took her several months thereafter to raise the necessary funds to hire her own attorney due to her lack of financial means to challenge the voluntary act of surrender.

The majority is correct that the period established by La. Ch.C. art. 1148 is peremptive and that a surrendering parent loses the right to petition for the nullity of a surrender of parental rights after the passage of ninety days from the execution of the surrender or the entering of an adoption decree, whichever is earlier. Here, the peremptive period for Ms. Haile to bring an action to annul her surrender expired on October 19, 2022. What the peremptive law fails to recognize, however, is the reality—and often dire circumstances—that indigent, unwed mothers face. The promise of financial assistance can exert immense pressure, leading some mothers to enter into agreements, such as voluntary acts of surrenders for adoption, that they might not have consented to under less desperate conditions. It may be prudent for the Legislature and the Louisiana Law Institute to review these procedures to ensure fairness, the best interest of the child, and to confront the harsh reality faced by indigent, unwed mothers.

2